UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR No. 08-038S
:
PATRICK CROWE :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Presently pending before the Court is Defendant's Motion to Vacate Sentence filed pursuant to 28 U.S.C. § 2255. (Document No. 28). On or about June 30, 2011, District Judge Smith referred this case to me for the limited purpose of conducting an evidentiary hearing, and making proposed findings of fact and conclusions of law regarding Defendant's claim that his defense counsel rendered ineffective assistance by failing to adequately consult with him at or around the time of sentencing regarding his direct appeal rights. The hearing was held on January 19 and 25, 2012.[1] Defendant was represented by Court-appointed counsel in connection with the hearing. Defendant and his former trial counsel testified under oath at the hearing. After listening to the two witnesses and observing their testimony, I credit the testimony of trial counsel. To the extent that Defendant's testimony was inconsistent with trial counsel's, it is rejected.

**A.   Proposed Findings of Fact**

1.    Defendant privately retained defense counsel in 2007 to represent him in connection with the Government's investigation of this case.

---

[1] The scheduling of the hearing was delayed because Defendant was temporarily in state custody dealing with other pending criminal matters and was unavailable. (See Document No. 50).

2. Defendant read and signed a Plea Agreement on February 8, 2008. (Document No. 2).

3. On April 14, 2008, the Government filed the Plea Agreement and a Criminal Information charging Defendant with four felony offenses – two counts of theft from an employee benefit plan (18 U.S.C. § 664) and two counts of failure to truthfully account for and remit federal payroll taxes (26 U.S.C. § 7202).

4. The Plea Agreement advised Defendant that he had the right to be represented by counsel at every stage of the proceedings against him (paragraph 6) and that the agreement was not binding on the Government if Defendant committed "any new offenses" (paragraph 12). (Document No. 2).

5. Defendant was released on unsecured bond after his initial appearance before the Court.

6. Defendant's guilty pleas were accepted by the Court on May 5, 2008.

7. Defendant's bail was revoked on September 16, 2008 following a hearing at which Defendant admitted violating his conditions of release by committing new criminal offenses in Florida, i.e., grand theft and uttering a forged check. (Document No. 9). The Court found that "[b]etween May 1, 2008 and the present, Defendant has knowingly and intentionally uttered fraudulent checks on three separate occasions: the first shortly predated his entry of a guilty plea on May 5, 2008, but the last two occurred after the Court imposed the conditions of pretrial release." Id.

8. Defendant's Pre-sentence Investigation Report was completed on October 3, 2008, and Defendant's counsel presented timely objections.

9. The Government moved for an upward sentencing departure due to Defendant's post-plea criminal conduct and bail violation. Defendant's counsel filed a timely opposition and supporting legal memorandum. (Document No. 14).

10. Prior to sentencing, Defendant had not fully paid the agreed attorney's fee to his defense counsel. Defendant's counsel testified that he advised Defendant that he "certainly would continue to represent him through the sentencing process" and "[a]fter that, if there were any proceedings or whatever, he would either be on his own or could get new counsel."

11. Defendant was sentenced on January 26, 2009. The Government argued for a sixty-month sentence. Defendant's counsel argued for a sentence within the thirty-three to forty-one month guideline range. The Court departed upward and imposed a forty-eight month sentence based primarily on Defendant's post-plea criminal offenses and bail violation.

12. Defendant was fully and competently represented by counsel during the entire sentencing process and not "abandoned" by counsel as of September 2008 as claimed by Defendant.

13. Because the Court departed upward, Defendant retained his appeal rights under paragraph 11 of the Plea Agreement. (Document No. 2).[2] The Court directly advised Defendant of this fact at the sentencing hearing and told him that "if you believe that the sentence that I've imposed in this case is unreasonable, you do have the right to appeal your case and you need to know that you would need to file those documents in a very short time period." (Document No. 24 at p. 48) (emphasis added). He also stated that defense counsel "can advise you of the deadlines associated with that." Id.

---

[2] At the evidentiary hearing, Defendant testified that this point was "very clear" to him and he described it as an "important part of the plea agreement to [him]."

14. Defendant acknowledged the Court's statement regarding his right to appeal and, at the time sentence was imposed, Defendant knew he had the right to appeal the Court's sentence and knew that he had to appeal in a very short time period. Defendant is an educated and intelligent man who graduated high school, attended two universities and has owned and operated various businesses.

15. After sentencing, Defendant spoke briefly with his defense counsel in the courtroom and, according to counsel, Defendant expressed that he was "fairly pleased/relieved" that the Court imposed forty-eight months and not the sixty months requested by the Government.[3] Defendant also asked his defense counsel to contact a friend/associate to tell her what happened. He did not make any other requests or ask any questions at that time.

16. After sentence was imposed, Defendant and his counsel did not further discuss the issue of appeal. Defendant did not express a desire to appeal his sentence or ask his defense counsel any questions about the process or deadline for appealing. Likewise, Defendant's counsel did not advise Defendant about the appeal process, inquire as to Defendant's wishes as to an appeal, or explain the legal prospects of any potential appeal issues.

17. Defendant's experienced defense counsel opined at the evidentiary hearing that:

> I did not think there were viable issues on an appeal. Had he asked me to file the notice – for two reasons basically. Number one, Judge Smith went above the guideline range by about seven months, if I recall, I think the high end of the guidelines was 41 months and he

---

[3] At the evidentiary hearing, Defendant confirmed that he was "pleased" that the sentence was forty-eight months and not the sixty months requested by the Government but indicated that he was, at the same time, "far from happy" about receiving a forty-eight month sentence. However, it stands to reason that a criminal defendant is rarely, if ever, happy about serving any prison time and this Defendant was no different. As discussed in my proposed legal conclusions, the issue is not whether Defendant was happy about serving any prison time but rather whether his defense counsel under these circumstances had "reason to think" that a rational defendant would want to appeal the forty-eight month sentence.

> gave him 48. So I didn't think it was an egregious departure as such. It added a few months but not a lot. It was below what [the Government] had asked for.
>
> Number two, I really thought that an upward – in my own mind, an upward departure, he was justified going out and getting arrested for something very similar to the charges themselves is not a good thing to do, and from my perspective as an attorney, is not going to help you on appeal, and it justifies the upward departure.
>
> So I did not think that there was a – based on what Judge Smith articulated and the reasons he articulated, I did not think that an appeal would go anywhere.

18. The Court entered Judgment on January 30, 2009. (Document No. 15). Defendant reviewed the Judgment and, on or about February 20, 2009, he wrote a letter to Judge Smith raising two specific and technical areas of concern with the Judgment which "might need some correction or clarifitation [sic]." Defendant's letter did not express any dispute as to the forty-eight month sentence imposed by Judge Smith or any desire to appeal or otherwise challenge the length of the sentence. Also, the letter did not ask about or request the appointment of counsel. The Probation Department responded to Defendant's letter on February 27, 2009 and directly addressed his two concerns as to payment of restitution and one of the special conditions of supervised release.

19. On or about April 9, 2009, Defendant wrote to the Clerk of this Court seeking a transcript of his sentencing hearing without cost to him. (Document No. 16). On April 28, 2009, the request was denied without prejudice because Defendant had not filed a request to proceed <u>in forma pauperis</u> ("IFP") and "has no action pending in this Court." (Document No. 17). Again, in his request, Defendant did not ask about his appeal rights and the applicable procedures or express any desire or intention to appeal his sentence.

20. On or about July 17, 2009, Defendant filed an untimely Notice of Appeal, a Motion for an Extension of Time to File a Notice of Appeal, and a Motion for Leave to Appeal IFP. (Document Nos. 19, 20 and 21). On July 30, 2009, Judge Smith denied the Motions but advised Defendant that he may refile his untimely Notice of Appeal as a Motion to Vacate under 28 U.S.C. § 2255 asserting ineffective assistance of counsel.

21. On September 1, 2009, the Court of Appeals dismissed Defendant's untimely appeal. (Document No. 27).

22. On September 14, 2009, Defendant filed the instant Motion to Vacate under 28 U.S.C. § 2255. (Document No. 28).

**B.   Proposed Conclusions of Law**

Under the two-part test in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to demonstrate ineffective assistance, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness," <u>id</u>. at 688, and (2) that counsel's deficient performance prejudiced the defendant, <u>id.</u> at 694. The <u>Strickland</u> test applies to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000).

In <u>Flores-Ortega</u>, the Supreme Court stated that counsel "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Id.</u> at 477 (<u>citing</u> <u>Rodriguez v. United States</u>, 395 U.S. 327 (1969)). The Court further noted that in those cases where the defendant does not expressly instruct an attorney either to file an appeal or not to file an appeal, the threshold issue is whether counsel consulted with the defendant regarding taking an appeal and if not, whether counsel had a duty to consult with the defendant about an

appeal. Id. at 478.  "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480 (emphasis added).  In determining whether counsel had an obligation to consult in a specific case, a court must take into account all information known to counsel at the time, including but not limited to: (1) whether the conviction follows a trial or guilty plea; (2) whether the defendant received the sentence bargained for as part of his plea; and (3) whether the plea or plea agreement expressly reserved or waived defendant's appeal rights.  Id.

Applying Flores-Ortega to these facts, I reach the following conclusions.  First, Defendant never specifically instructed his counsel to file a notice of appeal or reasonably demonstrated to his counsel an interest in appealing.  Second, Defendant's counsel did not consult with him at or after sentencing about the advantages and disadvantages of taking an appeal in this case.  Thus, the issue is whether defense counsel's failure to consult with Defendant about an appeal under these particular facts is constitutionally deficient representation.  For the following reasons, I conclude that it was not constitutionally deficient under these particular circumstances and so recommend.

In Flores-Ortega, the Court rejected a bright-line rule that defense counsel must always consult with the defendant regarding an appeal.  528 U.S. at 480.  Defense counsel has a constitutionally imposed duty to consult with the defendant about an appeal when counsel has "reason to think" that a rational defendant would want to appeal.  Id.  This determination can only be properly made "by considering all relevant factors in a given case." Id.

Defendant was first arrested for issuing bad checks in 1974, and has had a consistent pattern of committing fraud and financial crimes since that time.[4] In this case, Defendant was convicted of stealing money deducted from the paychecks of his Company's employees for health insurance and payroll taxes. The loss to the victims exceeded $250,000.00. After pleading guilty in this case and on bail awaiting sentencing, Defendant passed several bad checks in Connecticut and Florida in exchange for expensive jewelry. He also has several prior federal financial fraud-type convictions. In 1975, he made false statements to a bank in a loan application. In 1979, he made fraudulent representations to obtain a bank loan. In 1986, he was involved in a check kiting scheme and attempted to purchase a business with a fraudulent cashier's check. Finally, in 1995, he received a forty-six month federal sentence for wire fraud in connection with a scheme to misappropriate rent payments and security deposits for two apartment complexes he controlled, and he committed bankruptcy fraud.

Based on this history and, in particular, the fact that Defendant breached this Court's trust by committing additional financial crimes while on release pending sentencing, an appeal of Judge Smith's forty-eight month sentence would have had absolutely no chance of success, and it was objectively reasonable for Defendant's counsel to conclude that Defendant was "relieved" he only received forty-eight months and would have no interest in appealing. In other words, Defendant's counsel did not have "reason to think" that a rational defendant under these circumstances would have wanted to appeal and thus a constitutionally imposed duty to consult with Defendant about an appeal was not triggered. In fact, I conclude that these facts affirmatively show that this Defendant

---

[4] The following history comes from Defendant's Pre-sentence Investigation Report.

was fully aware of his right to appeal and expressed absolutely no interest in appealing during the relevant period.

Defendant knew he had the right to appeal since Judge Smith's sentence was above the guideline range, and he was specifically told by Judge Smith that he had such right and had to do so in "a very short time period." He never expressed any desire to appeal to his defense counsel. By writing directly to Judge Smith in February about the terms of the Judgment in this case, Defendant showed that he was willing and able to advocate for himself and to clearly identify and articulate any objectionable issues. It also shows that Defendant knew that he was not being actively represented by his former defense counsel. If Defendant truly wanted to appeal at the time, he would have made some effort to promptly articulate that to his former defense counsel or to the Court, and it is undisputed that he did not do so.

Defendant pled guilty in this case and exposed himself to an upward departure when he breached his plea agreement by committing new criminal offenses while on bail and awaiting sentencing. Considering all of these circumstances and the 18 U.S.C. § 3553(a) sentencing factors, an upward departure was effectively mandated by these facts, and Defendant had absolutely no legitimate basis upon which to assert that Judge Smith committed any legal error or abuse of discretion in imposing a forty-eight month sentence.[5] As stated by his defense counsel at the hearing, "we had to deal with the cards that we were dealt. I mean, there was no way to avoid that problem that [Defendant] created by being arrested and violating the terms of his bail after the plea agreement was signed. So that was the reality. We had to play with the cards that we were dealt."

---

[5] While there may have been nonfrivolous grounds to appeal a sixty-month sentence, there was simply not any legitimate basis to appeal the forty-eight month sentence imposed when considering the sentencing factors of deterrence and respect for the law and the fact that Defendant received a forty-six month sentence for a prior federal fraud conviction with similar facts and continued to commit financial fraud after his guilty plea in this case.

While it would have been preferable and advisable for defense counsel to have specifically consulted with Defendant about his appeal rights or to have taken other steps to protect Defendant's appeal rights while formally withdrawing from the case, the failure to take those steps in this particular case was ill-advised but not constitutionally deficient representation. Despite not having been fully paid by Defendant, his defense counsel acted reasonably and diligently, and was effective in insulating Defendant from a potential sentence of sixty months despite being dealt a very difficult hand by Defendant's own inexplicable post-plea criminal conduct.

For the foregoing reasons, I conclude that defense counsel's failure to specifically consult with Defendant regarding his appeal rights under these particular and unique facts was not constitutionally deficient representation and so recommend to Judge Smith.


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 2, 2012